UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| KIMBERLEE LEMERE-JACKSON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CAUSE NO. 3:13-cv-912-CAN |
| CAROLYN W. COLVIN,<br>Acting Commissioner of the Social<br>Security Administration | )<br>)<br>) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On September 3, 2013, Plaintiff Kimberlee Lemere-Jackson ("Lemere") filed her complaint in this Court. On February 13, 2014, Lemere filed her opening brief requesting that this Court reverse and remand this matter to the Commissioner to properly address the evidence. On May 22, 2014, Defendant Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner") filed her response brief. Lemere filed her reply brief on June 11, 2014. This Court may enter a ruling in this matter based on the parties' consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

**I.   PROCEDURE**

On July 30, 2010, Lemere filed her application for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income pursuant to 42 U.S.C. §§ 416(i), 423 alleging disability due to fractures and post traumatic arthritis in her left femur, left wrist, left hip, and a slight brain injury arising out of an accident on June 4, 2004, with an alleged onset of disability of June 4, 2010. Her claims were denied initially on October 29, 2010, and also upon

reconsideration on February 8, 2011. Lemere appeared at a hearing before an Administrative Law Judge ("ALJ") on March 29, 2012.

On May 22, 2012, the ALJ issued a decision holding that Lemere was not disabled. The ALJ found that Lemere met the insured status requirements of the Social Security Act through December 31, 2014. The ALJ also found that Lemere had not engaged in substantial gainful activity since June 4, 2010, and her status post remote history of multiple lower left extremity fractures and left wrist, and tendonitis of the right shoulder constituted severe impairments. However, the ALJ found that Lemere did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found that Lemere had the residual functional capacity ("RFC") to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently, stand and/or walk for brief periods totaling no more than 2 hours in an 8 hour workday, and sit for 6 hours in an 8 hour workday, provided that she has the opportunity to stand and take a couple of steps for 5 minutes out of every 60 minute period without abandoning the workstation or losing concentration on the task before her. He also found that Lemere can occasionally climb ramps and stairs, occasionally balance, stoop, kneel, crouch and crawl, but she can never climb ladders, ropes or scaffolds. He then found that Lemere is able to use her bilateral hands for frequent fine and gross manipulation, but she can never reach overhead using her dominant right arm, and she can never perform tasks requiring a forceful or repetitive grip and grasp or the use of vibrating tools. In addition, Lemere needs to use a cane for walking on uneven terrain or for prolonged ambulation over 100 yards. The ALJ then found that Lemere is capable of performing her past relevant work as an outpatient admitting clerk.

On July 9, 2013, the Appeals Council denied review of the ALJ's decision making it the Commissioner's final decision. *See Liskowitz v. Astrue*, 559 F.3d 736, 739 (7t h Cir. 2009); 20 C.F.R. § 404.981. On September 3, 2013, Lemere filed a complaint in this Court seeking a review of the ALJ's decision.

## II.   ANALYSIS

### A.   Facts

Lemere was a fifty-four year old female at the time the ALJ denied her claims. She has a high school education and completed two years of college. Lemere has performed past relevant work as an outpatient admitting clerk and received specialized job training for medical coding and transcription.

#### 1.   Claimant's Hearing Testimony

At the hearing, Lemere testified that at her last job, she sat seven and a half hours in an eight hour work day. The job required her to be able to use her hands to fax documents as well as use a computer. She testified that she stopped working at that job because it had "gotten to a point where it was getting very difficult to be there for any amount of time." Doc. No. 13 at 41. She told the ALJ she felt she was unable to work because she's unable to be in a seated or standing position for over five minutes without shifting or moving to reduce the pain in her left hip and femur. She stated that she drove approximately forty miles to the hearing, but had to stop twice because her hip and shoulder bothered her.

Lemere also testified that Dr. Randolph Ferlic, her hand surgeon, had suggested the next step for the pain in her left wrist would be to have it fused, but that she did not want to pursue fusion and risk losing any more movement in her wrist. Doc. No. 13 at 48. Lemere noted that

she had stopped seeing Dr. Ferlic because her insurance did not cover it. She stated that she believes she would be able to lift up to ten pounds. She also stated that she can stand for up to five minutes and walk about fifty feet. Lemere then testified that she used her cane every time she left the house. The ALJ questioned her use of the cane due to a consultative examination from 2010 that said Lemere had said she was supposed to use her cane but did not. Lemere replied that the only reason she wouldn't have been using her cane is if her right shoulder was in pain.

### 2. Medical Evidence

Lemere was involved in a motorcycle accident on June 5, 2004. As a result, her initial serious injuries included a broken left leg with the femur having pierced the skin, a left hip fracture, a fracture to her shin bone by the left knee, a broken left wrist, and a tear in ligament tissue inside her left knee. Immediately after the accident, Lemere underwent a series of procedures for her injuries. Her left femur was washed out and cleaned by removing any foreign debris or dead tissue. A rod was then inserted from her knee up into her femur, and she had the wound on her left thigh closed. She then had her left hip bone put back into alignment and secured with a device to hold the bone in place, and had hardware placed in her left knee. Lastly, she had her wrist bone put back into place. Two days later, on June 7, 2004, Lemere had her left wrist bone repositioned back into place again and had hardware placed to help stabilize the bone. Her left femur was again washed out and cleaned to remove any debris.

On July 21, 2004, Lemere then underwent surgery for her left wrist where the fragments of her fractured bone were not in the right position. The screw in her left wrist was removed and part of her wrist bone was removed. During a follow up appointment in 2004, Dr. Ferlic noted

4

the possibility that a further salvage procedure may be necessary for Lemere's wrist, specifically arthrodesis, or fusion, of the wrist. Lemere regularly attended follow up doctor's appointments for her injuries into 2007. In 2006, she underwent more procedures for the fracture to her left femur that had failed to heal. Lemere began seeing Dr. Christopher Balint, who became her treating physician for her left hip and left knee injuries, and received steroid injections that improved Lemere's condition. At the same time, Lemere also began to complain of right shoulder pain, which was classified as tendinosis[1].

On September 18, 2010, Dr. Crystal Strong, a consultative medical examiner, evaluated Lemere. Dr. Strong noted Lemere's history of pain issues in her left side due to a motor vehicle accident. She stated that Lemere did not use or require any assistive device to walk. Her impression was that Lemere had no limitations in her ability to reach, handle, grasp, or manipulate objects with her hands. Dr. Strong opined that if there were arthritic changes to Lemere's left hip and left knee, though she was not sure that there were drastic changes, it would limit Lemere to squatting, lifting from a squatted position, climbing stairs, and repeatedly transitioning from standing to sitting less than one third of a work day.

On September 1, 2011, Dr. Ferlic saw Lemere and noted that her chief complaint was pain in both of her wrists that began three years ago. Dr. Ferlic opined that her upper extremity usage was limited to a maximum of one third to one half of a work day. However, he also stated that to "definitively assess function impairment an FCE [functional capacity evaluation] could be pursued." Doc. No. 13 at 385. Dr. Ferlic referred to Lemere having a "clinical suspicion [of] bilateral CTS [carpal tunnel syndrome]" based on her reports to him of an EMG done fifteen

---

[1] At a follow up appointment, Lemere's right shoulder injury was referred to as tendinitis, which is the term the ALJ uses when outlining her severe injuries.

years ago. Doc. No. 13 at 385. In a follow up letter to Lemere's attorney later that month, Dr. Ferlic stated that he believes Lemere's upper extremity usage is limited to a maximum one third of a work day, and that fusion for her left wrist is still a possibility.

### B. Standard of Review

In reviewing disability decisions of the Commissioner, the Court shall affirm the ALJ's decision if it is supported by substantial evidence and free of legal error. *See* 42 U.S.C. § 405(g); *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003). "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. *Haynes*, 416 F.3d at 626. An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). However, an ALJ need not provide a "complete written evaluation of every piece of testimony and evidence." *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) (quoting *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995)). An ALJ's legal conclusions are reviewed *de novo*. *Haynes*, 416 F.3d at 626.

To be entitled to disability insurance benefits under 42 U.S.C. § 423 or supplemental security income under 42 U.S.C. § 1381a, Lemere must establish that she is "disabled." *See* 42 U.S.C. § 423(a)(1)(D). The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant's impairment or combination of impairments is severe; (3) the claimant's impairment meets or equals any impairment listed in the regulations and therefore is deemed so severe as to preclude substantial gainful activity; (4) the claimant is unable to perform her past relevant work given her RFC; and (5) the claimant cannot adjust to other work in light of her Residual Functional Capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)[2]; *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps. 20 C.F.R. §§ 404.1520(a)(4). An affirmative answer at either Step Three or Step Five establishes a finding of disability. *Briscoe*, 425 F.3d at 352. At Step Three, if the impairment meets any of the severe impairments listed in the regulations, the Commissioner acknowledges the impairment and finds the claimant disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpart P, § 404. However, if the impairment is not so listed, the ALJ assesses the claimant's RFC, which is then used to determine whether the claimant can perform her past work under Step Four and whether the claimant can perform other work in society under Step Five. 20 C.F.R. § 404.1520(e)-(g). The

---

[2] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1504 *et. seq.* The SSI regulations are substantially identical to the DIB regulations and are set forth at 20 C.F.R. § 416.901 *et. seq.* For convenience, only the DIB regulations will be cited henceforth in this opinion.

claimant bears the burden of proof on Steps One through Four, but the burden shifts to the Commissioner at Step Five. *Young*, 362 F.3d at 1000.

## C. Issues for Review

This Court must ascertain whether the ALJ's RFC determination for Lemere is supported by substantial evidence. Lemere argues that the ALJ's opinion failed to articulate a logical bridge between the evidence and his conclusion at Step Four because (1) the ALJ ignored significant medical evidence regarding the severity of the trauma to Lemere's left wrist, (2) the logic of the ALJ in rejecting her treating physician cannot be traced, and (3) the ALJ "played doctor" by substituting his own medical opinions for that of medical evidence in the record. Doc. No. 18 at 1.

At Step Four, the ALJ must make an RFC determination in order to assess whether a claimant is able to perform her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv). The RFC is "an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An individual's RFC demonstrates her ability to do physical and mental work activities on a sustained basis despite functional limitations caused by any medically determinable impairment(s) and their symptoms, including pain. 20 C.F.R. §§ 404.1545; SSR 96-8p 1996. In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the case record. 20 C.F.R. §§ 404.1545; *Young*, 362 F.3d at 1001. The record may include medical signs, diagnostic findings, the claimant's statements about the severity and limitations of symptoms, statements and other information provided by treating or examining physicians and psychologists, third party witness reports, and any other relevant evidence. SSR 96-7p 1996. "Careful consideration

must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone." SSR 96-8p. However, it is the claimant's responsibility to provide medical evidence showing how her impairments affect her functioning. 20 C.F.R. § 404.1512(c). The ALJ must rely on medical opinions based upon objective observations and not merely a recitation of a claimant's subjective complaints when evaluating the claimant's RFC. *Rice*, 384 F.3d at 371 (7th Cir. 2004). Therefore, when the record does not support specific physical or mental limitations or restrictions on a claimant's work-related activity, the ALJ must find that the claimant has no related functional limitations. *See* SSR 96-8p.

### 1. The ALJ properly considered the evidence regarding the severity of Lemere's left wrist impairment.

Lemere contends that the ALJ ignored significant medical evidence demonstrating the severity of the historical trauma and post-traumatic changes to Lemere's left wrist. She asserts that the ALJ did not articulate a logical bridge in his RFC determination because he "expressed inadequate appreciation for the severity" to her left wrist. Doc. No. 27 at 5. She states that the ALJ had to indicate understanding of the severity of the injury and the surgeries in order for a reviewing court to assess whether the ALJ's decision is supported by substantial evidence. Lemere expresses concern that the ALJ failed to show he understood the injuries by his lack of use of technical medical language to describe her surgeries. She then contends that the ALJ failed to acknowledge the possibility of fusion of her left wrist as a treatment option to reduce her pain. Doc. No. 18 at 14. Lemere argues that if the ALJ did not properly understand the injury, he could not have properly weighed her treating physician's evidence. Despite Lemere's

arguments, however, the ALJ did not ignore any of the medical evidence that relates to the severity of Lemere's left wrist impairment as discussed below.

An ALJ "is not required to discuss every piece of evidence but is instead required to build a logical bridge from the evidence to her conclusions." *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009). Nevertheless, an ALJ may not ignore a line of evidence contrary to his decision either. *Golembiewski*, 322 F.3d at 917. "The ALJ's failure to address these specific findings, however, does not render his decision unsupported by substantial evidence because an ALJ need not address every piece of evidence in his decision." *Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002) (finding where an ALJ acknowledged a severe medical problem and cited numerous medical reports, he did not ignore evidence and he established a bridge between the evidence and his conclusion).

The ALJ did not ignore the history or severity regarding Lemere's left wrist injury. At the beginning of the RFC assessment, the ALJ stated "while I agree that the claimant's history of fractures in the lower left extremity and left wrist are 'severe' impairments . . . these conditions do not result in limitations which preclude all work." Doc. No. 13 at 22. He acknowledged that "the evidence does show that the claimant has typical post-traumatic degenerative changes at the fracture sites." *Id*. He explained that Lemere was involved in a motorcycle accident, which resulted in "multiple injuries, including a fracture of the left ribs, distal radius, femur, tibial plateau, hip, and left wrist." Doc. No. 13 at 23. He indicated that Lemere "underwent several procedures to surgically fixate the lower extremity and left wrist, and shortly after the left wrist surgery, she underwent a partial hardware removal with distal ulnar resection." *Id*. He indicated that her treatments after that generally consisted of injections for her knee and hip and treatment

10

for right shoulder pain rather than her left wrist. *Id*. All of these statements show that the ALJ did not ignore the evidence pertaining to Lemere's left wrist injuries and condition.

Lemere's other arguments are also unpersuasive. Despite Lemere's unsupported arguments to the contrary, the ALJ need not discuss every detail of every procedure to demonstrate that he has an adequate understanding of the injury and surgeries. In addition, Lemere's demand that the ALJ rely on Dr. Ferlic's recommendation of fusion surgery in determining Lemere's RFC related to her wrist is misplaced. First, the ALJ acknowledged the possibility of fusion surgery when he explicitly stated that Dr. Ferlic had mentioned "pursuing left wrist complete arthrodesis." *Id*. Second, the reports of Dr. Ferlic that Lemere cites in her effort to persuade the Court all say "may" require arthrodesis, not that it was required. Doc. No. 18 at 7. Morevoer, Lemere testified that she does not want to have her wrist fused because she does not want to lose any more movement than necessary. Clearly then, the ALJ used technical language to describe her injuries and treatments and discussed the possibility of fusion surgery. As such, the ALJ did not ignore any of the evidence Lemere now begs the Court to consider. As a result, the ALJ built a logical bridge from the evidence to an RFC determination regarding Lemere's left wrist that is supported by substantial evidence.

### 2. The ALJ's decision to not give Lemere's treating hand surgeon, Dr. Ferlic controlling weight is supported by substantial evidence.

Lemere also argues that remand is necessary because the ALJ refused to give Dr. Ferlic's treating source opinion controlling weight without articulating sufficiently the logic of his reasoning for rejecting the opinion. An ALJ must give a treating physician's opinion controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and if it is "not inconsistent with other substantial evidence in the record." *Hofslien*

11

*v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000); 20 C.F.R. §§ 404.1527(d)(2); SSR 96-8p; SSR 96-2p. A "treating source" is a medical professional who provides medical treatment or evaluation to the claimant and has or had an ongoing relationship with the claimant. 20 C.F.R. § 404.1502. Generally, an ALJ weighs the opinions of a treating source more heavily because he is more familiar with the claimant's conditions and circumstances. *Clifford*, 227 F.3d at 870; 20 C.F.R. § 404.1527(c)(2). However, a claimant is not entitled to benefits merely because a treating physician labels her as disabled. *Dixon*, 270 F.3d at 1177; 20 C.F.R. § 404.1527(d)(1). "Once well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight." *Hofslien*, 439 F.3d at 376. While the ALJ is not required to award a treating physician controlling weight, the ALJ must articulate, at a minimum, his reasoning for not doing so. *Clifford*, 227 F.3d at 870.

If an ALJ does not give a treating physician's opinion controlling weight, he must consider factors, including the claimant's examining and treating relationship with the source of the opinion, the support provided for the medical opinion, its consistency with the record as a whole, and the physician's specialty, when determining what weight to give to the opinion. 20 C.F.R. § 404.1527(c)(1)–(6); *see also Scrogham v. Colvin*, No. 13-3601, 2014 WL 4211051, at *8 (7th Cir. Aug. 27, 2014). "If the ALJ discounts the physician's opinion after considering these factors, we must allow that decision to stand so long as the ALJ 'minimally articulated' his reasons – a very deferential standard" that the Seventh Circuit has deemed "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (citing *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008), quoting *Rice*, 384 F.3d at 372).

12

In the RFC determination, the ALJ indicates that Lemere is limited to using both hands for "frequent[3] fine and gross manipulation, . . . can never reach overhead using her dominant right arm, and . . . can never perform tasks requiring a forceful or repetitive grip and grasp or the use of vibrating tools." Doc. No. 13 at 22. Lemere challenges the ALJ's decision not to give controlling weight to the opinion of Dr. Ferlic in reaching this conclusion. In considering the medical evidence of Lemere's wrist condition, the ALJ summarized Dr. Ferlic's opinion stating that "she was limited to using her upper extremity to a maximum of 1/3 to ½ workday, and that this finding was supported by 'prior entertainment of pursuing left wrist complete arthrodesis [i.e., fusion surgery] in 2005." Doc. No. 13 at 23 (citing *id.* at 385 (Ferlic's September 1, 2011, treatment notes); *id.* at 200 (Ferlic's September 28, 2011, letter to Lemere's attorney)). The ALJ then acknowledged that Dr. Ferlic's opinion reflected limitations to both of her extremities that would prevent her from performing all work. *Id.* Yet, the ALJ found Dr. Ferlic's opinion "hardly persuasive, let alone controlling." *Id.* Having decided that Dr. Ferlic's opinion was not worthy of controlling weight, the ALJ was then obligated to articulate his reasons for doing so taking into account the regulatory factors cited above. Despite Lemere's argument to the contrary, the ALJ did just that.

First, the ALJ acknowledged that Dr. Ferlic was Lemere's treating physician and orthopaedic surgeon. *Id.* at 24. Second, the ALJ explained that Dr. Ferlic's opinion was not consistent with the record and was not supported by objective evidence. Specifically, the ALJ found Dr. Ferlic's opinion unsupported because there was no contemporary imaging or diagnostic testing done to show the condition of Lemere's wrist in 2011. Moreover, the ALJ

---

[3]Appendix C of the Dictionary of Occupational Titles defines "occasionally" as up to 1/3 of the time, "frequently" as 1/3 to 2/3 of the time, and "constantly" as 2/3 or more of the time.

13

noted inconsistencies between Dr. Ferlic's opinion and the objective medical data points noted in the opinion of consultative examiner Dr. Crystal Strong who had examined Lemere in September 2010. Also persuasive to the ALJ was Lemere's own testimony about her use of her hands in a variety of activities over the time period in which she had indicated pain in both of her wrists which conflicted with Dr. Ferlic's opinion about Lemere's remaining functionality.

Most importantly, the ALJ did not simply make conclusory statements about the lack of sufficient evidentiary support for Dr. Ferlic's opinion or the inconsistencies between Dr. Ferlic's opinion and other evidence in the record. His opinion detailed evidence from Dr. Strong's examination of Lemere and compared it to the results of Dr. Ferlic's examination. He also demonstrated Dr. Ferlic's own hesitation to commit to his conclusion that Lemere could not work because of the limitations she faced due to her wrist impairment. As the ALJ noted, Dr. Ferlic qualified his opinion by stating that the only way to definitively assess the functionality of Lemere's upper extremities would be through a Functional Capacity Evaluation. *Id.* at 24.

Lemere argues that this is not enough to create the logical bridge necessary to explain why controlling weight was not given to Dr. Ferlic's opinion. Lemere argues that her wrist surgeries in 2004–2005 and x-rays from that same time period along with Dr. Ferlic's September 2011 physical examination of her wrist and reference to the possibility of fusion surgery amount to sufficient evidence in support of Dr. Ferlic's opinion that she cannot work. Yet the ALJ's opinion shows that he considered all of this evidence in determining what weight to give to Dr. Ferlic's opinion. Lemere is just not happy with how the ALJ, acting within the authority granted to him, interpreted Dr. Ferlic's opinion in light of the entire record. Such dissatisfaction does not

justify remand when the ALJ supported his decision with substantial evidence and articulated a logical explanation for discounting the opinion.

> 3. **The ALJ did not play doctor when determining Lemere's RFC analysis because he articulated a bridge between the evidence and his conclusions, which were supported by substantial evidence.**

Lemere argues that the ALJ failed to build a logical bridge between the evidence and his conclusion because he "played doctor" by substituting his own opinion for that of a medical doctor. Doc. No. 18 at 20-21. She argues that the ALJ did not properly weigh the evidence and inserted his own opinion. Doc. No. 27 at 11. The Commissioner argues that the ALJ reasonably considered the record as a whole in determining Lemere's RFC and fully explained his reasoning the weight he gave the medical opinions. Doc. No. 24 at 18-19. The Court agrees with the Commissioner.

An ALJ "plays doctor" when he ignores relevant evidence and substitutes his own judgment. *Olsen v. Colvin*, 551 Fed. App'x 868, 874–75 (7th Cir. 2014) (collecting cases). The ALJ cannot "substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record." *Clifford*, 227 F.3d at 870. While medical source statements are evidence, the RFC assessment is the ALJ's ultimate finding based on a consideration of the medical source statements and all other evidence in the record regarding what an individual can do despite her impairments. SSR 96-5p 1996. An ALJ need not articulate the expression of his RFC determination function-by-function; a narrative discussion of claimant's symptoms and medical source opinions is sufficient. *Knox v. Astrue*, 327 Fed. App'x 652, 657 (7th Cir. 2009).

As already discussed related to Dr. Ferlic's opinion about Lemere's limitations due to her wrist condition, the ALJ thoroughly discussed the medical evidence in this case and articulated his reasoning for his RFC determination. Lemere, however, argues that the ALJ merely reached conclusory statements after his discussion of evidence and that his limitations were not supported by a doctor's opinion. She seems to believe that the ALJ made up his determination of her limitations when he concluded that

> while the claimant's surgical history of the left wrist does suggest a limitation from forceful and repetitive grasping or gripping, there is no evidence that the claimant is not otherwise able to perform fine and gross manipulation at least frequently, if not constantly. Likewise, the claimant's, largely untreated, right shoulder pathology suggests a limitation in overhead reaching, but nothing further.

Doc. No. 13 at 24. What Lemere fails to see is that the ALJ only arrived at this conclusion after two pages of discussion about Lemere's limitations, addressing her surgeries and Dr. Ferlic's and Dr. Strong's medical opinions, as evidenced by her medical record. Moreover, the ALJ is charged with making an RFC determination that reflects the entire record, not just one doctor's opinion. Consequently, Lemere's suggestions that limitations ultimately included in a claimant's RFC must be specifically stated in a medical source opinion and that limitations noted in medical source opinions must be included in an ALJ's RFC determination are not convincing. As a result, the Court finds that the ALJ did not inappropriately "play doctor" when defining the limitations to be included in and excluded from Lemere's RFC.

### 4. Lemere's other arguments also fail.

Lemere appears to have raised concerns about the ALJ's credibility determination as well as the ALJ's neutrality in her opening brief. As to credibility, Lemere waits until the conclusion of her opening to assert her belief that the ALJ's credibility findings were patently wrong and

16

improperly explained in the decision. Without establishing the legal standard for credibility determinations, Lemere references some concerns she has, but then cuts the argument short. Lemere seems so confident in her other arguments that she decides not to develop her credibility argument fully. In so doing, Lemere waived any credibility argument. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument', really nothing more than an assertion, does not preserve a claim.").

As to the ALJ's neutrality, Lemere hinted throughout her entire opening brief that the ALJ was not a neutral decision maker, but rather a biased and hostile advocate. *See, e.g.*, Doc. No. 18 at 3 n.1, 26 ("the ALJ's apparent adversarial approach to Ms. Lemere's case"). Lemere has presented no support for this conclusion other than the fact that the ALJ did not find Lemere legally disabled for the purposes of disability benefits. Moreover, Lemere's attacks on the ALJ's ethics are unpersuasive when the ALJ included more limitations in Lemere's RFC than the consultative examiner, on whose opinion Lemere urges the Court to rely, recommended.

## III. CONCLUSION

For the reasons stated above, the Court finds that the ALJ's RFC determination was supported by substantial evidence and he did articulate a logical bridge from the evidence in the record to his findings. Therefore, the Court **DENIES** Lemere's request for remand. [Doc. No. 18]. The Commissioner's decision is **AFFIRMED**. The Clerk is **DIRECTED** to term the case and enter judgment in favor of the Commissioner.

**SO ORDERED.**

Dated this 17th day of September, 2014.

S/Christopher A. Nuechterlein  
Christopher A. Nuechterlein  
United States Magistrate Judge